Good morning, Your Honor. Could you identify yourself for the record and let me know how you are. I'm Ryan Reyna, the Office of the State Appellate Defender representing the appellant Darrell Dorsey. I need about 15 minutes for the argument and if I could reserve 5 minutes in rebuttal as well. How about, let's negotiate here, it's like a Turkish bazaar, how about 13 minutes, 2 minutes for rebuttal? Absolutely. Fine. Maybe even as little as 10, really depending on your questions, I could do it in 10 or less. We won't penalize you for any questions that we have, I promise. Counsel? Good morning, Your Honors. My name is Myles Kelleher on behalf of the people and I don't anticipate needing more than 15 minutes. Great. Thank you, Mr. Kelleher. All right. Counsel, you can begin whenever you're ready. May it please the Court, 14-year-old Darrell Dorsey received a 76-year sentence in 1998 and was recently denied leave to file a successive post-conviction petition challenging the constitutionality of the sentence under the Supreme Court's opinion in Miller v. Alabama. Illinois courts have found cause to file a successive petition in similar circumstances, so the only real issue before you today is whether he established prejudice for purposes of filing his successive petition. The circuit court found that Mr. Dorsey did not establish prejudice based on its belief that Miller only applies to mandatory life sentences without Mr. Dorsey's consent. The courts in Reyes, the Supreme Court, found that Miller applies to de facto life sentences such as Mr. Dorsey's. Mr. Reina, when you're saying that it's a de facto life sentence, how are we going to determine that? Do we not take into consideration that it gets day-for-day time? Do we not take into consideration any penalties he may receive in the penalty? At what point do we stop slicing up the pie here? Well, Your Honor, initially I would say it is a 76-year sentence on paper, so the question is whether the 76-year sentence is a de facto life sentence. But he gets day-for-day credit because he was sentenced prior to the mandatory sentence, correct? He is, Your Honor, he's eligible for day-to-day credit, but it is not guaranteed that he will get day-for-day credit. Okay, so if he does get day-for-day credit, are we still looking at a de facto life sentence? If the sentence is half of a 76-year sentence, a 38-year sentence, it would still be a de facto life sentence. How would we figure that? What case would you say is a 38-year sentence? Well, Your Honor, I understand that there's not an Illinois case holding that a 38-year sentence is a de facto life sentence, but we're at the pleading stage of post-conviction proceedings here, so the question is really whether a 38-year sentence could be a de facto, if there's no set of facts that would allow for a 38-year sentence to be a de facto life sentence. And I don't think we can say that, because while there isn't an Illinois case holding it at a 38-year sentence as a de facto life sentence, there are... So if he had 38 years, what would that put him at when he gets out? I'm sorry, Your Honor? How old would he be when he gets out? Fifty-three. Okay. And there are cases from other states that have held that a sentence is a de facto life sentence. I'm almost 53, so I don't think that's a life sentence, 53. Yes, Your Honor, you have the benefit, too, of not having served any time in prison, I mean, you're showing the effect of prison life on life expectancy. Basically, prison diminishes life expectancy. So his connection to prison would be a much different case. The kind of evidence you're envisioning, if we were to remand this for a hearing, would be talking about practicalities specific to this individual. How rough of a prison he's in, his own health, his family's health history, is there a history of cancer in the family? Where do we cabin this if we start going into individualized terminations, other than just looking at years? Right. Well, I think you're correct that those are the types of things we would look at. A retrospective, possible psychological examination, you could present scientific evidence relating to juvenile brain development. And as far as... What does that have to do with the life sentence part, though? It's just something that could be introduced in further post-conviction proceedings, since we're at the pleading stage now. No, I understand. But what would that have anything to do with how long he's... Whether this is going to be a de facto life sentence or not, his psychological development? Well, I mean, that really relates obviously to more of his understanding of what happened, and maybe the fairness of the sentence. Okay, so what kind of things do you envision to show that it was a de facto? There is case law talking about de facto life sentences. But what evident kind of stuff? Prison conditions? I think all of that is relevant. Prison conditions, possibly retroactive psychological examination. The issue of life expectancy could be litigated. Aren't these matters, though, Mr. Reina, for the legislature, wouldn't you say? No, Your Honor, I mean... There are also these statutory kind of guidelines right now, though. Aren't you asking for... Right now, the statutes envision certain mitigating and aggravating factors. And I agree that all these things could be brought out of the sentencing hearing, and no one would necessarily deny that. But aren't you really asking us to create some sort of legislation by saying this one is a de facto? No, and particularly in this case, because of the stage of proceedings we're at, I don't think you have to draw any kind of line as to what a de facto life sentence is. Because we're at the motion for leave to file stage, the question is whether this could be a de facto life sentence or if there's no set of circumstances under which it couldn't be. But in Illinois right now, our cases do look at the fact that he will be eligible to be released at the age of 53. Not that that's a great thing. I'm not suggesting it. But I'm saying that other cases, you know, in the First District have already determined that we do take into account this idea that he's going to do half. And more than likely he will. Well, Your Honor, if you're talking about people, V. Evans, the other case, that court did not consider whether, it basically assumed that he would get this credit and didn't consider that he might not, that the sentence on paper isn't at day for day. It's a 76-year sentence in this case. The defendant in that case was also 17 years old, where we're dealing with a 14-year-old defendant in this case, which makes, you know, a proper minor sentencing hearing more important and also makes the effect of prison life more important. If you recall, this sentencing hearing took place after the juvenile was found guilty, which, you know, even under the recent changes, he would still be tried as an adult, wouldn't he? He would have a transfer hearing. Yeah. But, and he did. He did, yes. So that hasn't changed. But he was found guilty of a shooting that was in a small, very small, enclosed area. One person was killed, murdered. The jury also found that he attempted the murder of two other individuals, one of whom was fairly seriously wounded and the other was shot. It wasn't a grazed wound. And the court took into account his youth, but it also took into account, you know, that this was a situation that could have been a triple homicide. And but for the, you know, luck or whatever, the other two individuals, you know, were not murdered. So, I mean, this particular sentence in this particular case, I mean, it seems to me the trial judge went through a fairly exhaustive hearing. Well, Your Honor, there was a sentencing hearing where the judge said he considered his youth. But the judge actually looked at the nature of the offense, which was perfectly acceptable, as particularly aggravating, the gang element of the offense. And that actually, under the Miller cases, I think would now be considered a mitigating circumstance, particularly with Darrell Dorsey, this defendant, because there was a testimony from a psychiatrist that wasn't particularly passive and vulnerable to the influence of older people, such as older gang members. And the susceptibility to influence of older people is something Miller and Holman specifically discuss as something that needs to be considered at basically adult sentencing for a juvenile defendant. Do you really think the out-of-state cases that you've cited support your position here? I think you state that Pierson and then Bertholdt support your position. Yes. I mean, those cases, Pierson holds that a 35-year sentence is a de facto life sentence. But that wasn't even a murder, was it? It was a robbery and a burglary? And the defendant got 35 years for a robbery and a burglary. No murder involved. And isn't that the same  nature of the offense, though, is not particularly, you know, it doesn't relate to whether the term of years is a de facto life or not. And the nature of the offense would still be considered here. Sure. But doesn't the sentence with the crime have some basis in terms of whether it's de facto life when you're saying the person was convicted of robbery and burglary and they received 35 years? That's completely different from a person who committed a murder and gets 35 years. I mean, there really isn't any suggestion here that in Illinois if you were found guilty of robbery and burglary that you get a 35-year sentence. Can you envision that? Well, Your Honor, I don't know if that's the question, really, is whether it's an appropriate sentence. Well, I just, I'm asking you, how do you argue to us that Faircloud and Pearson really support the position in this case? Those cases support my position in this case because they discuss Miller and how it applies and should apply here. And basically, Miller demands a particularized, individualized determination of the sentence, which needs to take into account specific factors, including the nature of the offense, but also the defendant's youth and all of the transient effects and attributes of youth. But weren't those cases really talking about mandatory life and then come down to mandatory, what would appear to be a de facto life? What case in Illinois would you say tells us that when there's a day-for-day that this sentence of 36 years is a de facto life? The only case in Illinois that would say that this is, there should be a new sentencing hearing is Holman, I think, where it says all of these factors need to be discussed. There isn't an Illinois case that says a 38-year sentence is a de facto life sentence. There's not one that says it's not a de facto life sentence. How does Holman support you? I'm sorry? How does Holman support you here that this is a de facto life sentence? Well, Holman rejects the state's argument. The sentence in Holman was... It was a life sentence. It was natural life, right? A 17-year-old defendant in natural life. But he had two murders in his background. But it was a life sentence. Not mandatory, though, because it was not required. The judge didn't have to give him a mandatory life. But he did get a life sentence. Yes. Holman supports me because it rejects the argument basically that the judge, with the judge in this case, is a proper consideration of youth under Miller. The judge is mere mention of considering the defendant's youth in mitigation. Holman specifically holds that all of these factors need to be considered. And there's evidence here that wasn't available in Holman. Should we wait for guidance from the Illinois Supreme Court? I mean, the only de facto life case out there really is Reyes, isn't it? From the Supreme Court, in which, if I'm not mistaken, the sentence was like 100 years. Right. Should we wait for guidance? There are cases pending. Is there something you think that perhaps... There's nothing preventing you from reaching this issue now. The Supreme Court has not held that a 38-year sentence is not a de facto life sentence. And, again, I don't think this is a case where you really need to draw a line as to what's a de facto life sentence or what isn't. Mr. Dorsey is just asking for permission to file his petition. Unless we say that this is a de facto life sentence. I think perhaps you could say that there conceivably could be a set of facts that would allow a 38-year sentence to be a de facto life sentence and that that's what needs to be determined in the post-conviction proceedings. Counsel, if we start getting into individualized conversations, not just looking at how old the defendant is and how many years he got or she got, but looking at things like, you know, what prison they're going to be in or something, we could look at actuarial tables, right? I mean, people of different genders don't have the same life expectancy. People of different races don't have the life expectancy. I mean, we could end up having a body of case law that says 38 years for a 14-year-old African-American is treated differently constitutionally than the same number of years, the same age for an Asian defendant or a Caucasian defendant. Is that where we're headed if we start going into individualized determinations, and is that a good idea for a court and not the legislature? I don't think this is really opening a floodgate quite to the extent you might be suggesting because we're talking about some limited number of juveniles who receive lengthy sentences but also then have to establish some kind of problem with the sentencing hearing. So I don't think there's going to be just an exorbitant amount of individualized rules coming out of this necessarily. But when we're talking about taking the liberty of a 14-year-old away, possibly for the rest of his life or at least for most of it, if not most of his adult life, I don't think it's too much to ask to give all those things consideration. It's obviously a very, very severe situation. And in this case, we have evidence that this is the type of case that Miller should apply to, whether it's a gang-motivated case and you have a particularly susceptible young child who's, according to State's whole theory of trials, doing something in somebody else's direction, basically. If there are no further questions, Your Honor, I would ask that you reverse the circuit court's ruling and grant me to file a successive petition. Thank you, Mr. Ranum. Mr. Kallagher? May it please the Court. The trial court properly denied defendant leave to file a successive post-conviction petition. Defendant's sentence was not a de facto life sentence. Mr. Kallagher, do we look at the actual sentence that he was given or the possibility that he'll get a lesser sentence? Your Honor, this Court must look at the possibility that defendant will likely serve only half of his sentence and be released at the age of 53. And we know that from the Supreme Court case of Patterson, where the Court, in considering the defendant's 36-year sentence in that case, actually considered the fact that he would likely be required to serve 85%, which would actually bring the sentence down to 30 years and 7 months. So that was a factor that the Illinois Supreme Court considered. And also in the case of Evans that was previously mentioned, that's a recent case, the Court specifically considered that defendant was eligible for day-for-day good conduct credit. In that case, the defendant was sentenced to a 90-year sentence. However, the Court in Evans acknowledged that he would likely be serving only 45 years and he would be released at the age of 62. That case is very similar procedurally to this case, where the defendant sought leave to file a successive post-conviction petition. It was denied by the trial court. What about counsel's position that when you're sentencing a 14-year-old to the majority of his life in prison that you should be considering the questions of what's the likelihood he'll survive for that long in the Department of Corrections? Isn't that something that a trial judge should consider when sentencing? The trial court here, as it should, considered the defendant's youth and its attendant characteristics and obviously in considering the defendant's youth, the trial judge would have considered that very possibility that the defendant would be serving a lengthy term of years, but this is something that the trial court considered. Well, other than saying that he took into account his youth, what did he really say? Well, first of all, the trial court obviously considered the nature of the offense, found it to be indiscriminately ruthless, noted that there was a possibility that actually four people here could have been killed. There was one person also in the restaurant. Yeah, but other than I'm talking now about his attendant youth, what else did he say? Is there anything more? Yes, the trial judge specifically stated that it had considered the history and the character of the defendant. It had considered the PSI, and the pre-trial investigation report contained the social and family history of the defendant. It contained information about his education, about any employment, his health history. So the PSI alone contained all sorts of information. But it didn't contain the psychological report showing that he was particularly susceptible to other people. Is that correct? Well, counsel mentioned that the trial court failed to consider the reports, the psychological reports from the juvenile transfer hearing, but that argument is positively rebutted by the record. The trial judge, well, counsel at the sentencing hearing specifically asked the sentencing judge to consider those reports, and the judge's findings, he stated, I had considered all of the evidence presented at the hearing. And so there's no reason to believe that the judge did not look at these reports. And also the case law is well settled that when litigation evidence is before a court, it's presumed that the sentencing court considered it. So there's absolutely no evidence here that the trial judge didn't consider those reports. In fact, the trial judge specifically said he had considered all the evidence presented at the hearing. The trial judge did a very thorough job here. In addition to the PSI, the trial court stated that it had considered all of the evidence in mitigation and aggravation. It also heard evidence from, in mitigation, a number of letters were submitted on defendant's behalf. The trial court considered those. The trial court also heard testimony from defendant's aunt about defendant's character. The trial court also heard testimony from defendant's cousin about defendant's character. Now contrast this with the sentencing hearing in Holman where the defense did not even present mitigating evidence. And yet the Supreme Court found that when looking at the, reviewing the sentencing hearing in Holman, found that there was sufficient evidence of defendant's youth and attendant characteristics so that the sentencing hearing in Holman did comply with Miller. And in this case, even assuming argument or that defendant's sentence could somehow be considered a de facto life sentence, he still wouldn't be entitled to relief under Holman because when the record is reviewed in this court, it's very apparent that the trial court did consider defendant's youth and attendant characteristics. The sentencing hearing did comply with Miller. Defendant did receive the individualized consideration that he was entitled to during the sentencing hearing. So the trial court here did everything that he was supposed to do under Miller, even though Miller had not yet come out yet. He still... Well, in Holman, the Supreme Court provided some instructions as to how Miller should be applied. And the court stated that the only evidence that matters is evidence of defendant's youth and its attendant characteristics at the time of sentencing. So we really have to look at what was going on approximately 20 years ago. And the judge specifically said, Well, how is that along with Miller and its retroactivity? Well, when the sentencing judge said, obviously I recognize the youth of defendant in mitigation, I think it's reasonable to assume that the judge understood that, you know, youths do have characteristics different than adults. Mr. Kelly, isn't probably the best argument you can have that courts need guidance and that there needs to be a line drawn either by the Illinois Supreme Court or the legislature that will tell these judges that sit every day and have the incredible task of actually sentencing someone, where is the line? How can we say to judges today, by our opinion, that this is where a de facto life sentence begins and ends? Isn't that really what the judges need? And is there really a line that this court can draw clearly? And isn't that the real essence of your position, that where do we draw the line? I mean, and don't the trial judges need some guidance? How can they get it if there's cases all over? Your Honor, I agree that the Supreme Court has yet to provide that guidance. The Supreme Court has not implemented a bright line test to determine a precise age of release. But we do know that for a 100-year sentence, a 90-year sentence, maybe 75 years, when we get down closer to this, although if the actuarial tables are correct, he's basically spending four-fifths of his life in prison, isn't he? I mean, if 62 is the life expectancy? Well, at age 53, he's still... Yes, here the defendant would be released at age 53, assuming he gets a good time credit that he's entitled to. The Supreme Court in Williams did say that 97 years is de facto. Here, numerous other courts, Evans and Applewhite, have held that a release at the age of 62 is not de facto. We're talking here nine years younger, at age 53, so... I'm talking about a really, really youthful offender, though, a 14-year-old. Yes, and... There's a big difference between a 14-year-old and an 18-year-old, and a 20-year-old, but this is a 14-year-old. That's correct, and this was also an extremely serious offense. Certainly it was. And the sentencing judge had to consider the facts of this case, which were extremely cold-blooded, ruthless, unprovoked. We could have been dealing with four murders here. The judge pointed that out, and he described it as indiscriminately ruthless, and noted that the defendant kicked open the door of this small restaurant, just started shooting indiscriminately. There's no question that the facts are horrendous, no question, but he's 14. There's a big difference. Yes, and the judge had to balance these different factors, certainly had to take into account that the defendant was a very young age, and the judge specifically stated that, but also balanced it with the seriousness of the offense, which is given, which is considered the most important factor in sentencing, and the judge had a sentencing range of a minimum of 32 years, a maximum of 120 years. The judge properly exercised his discretion, sentenced the defendant to 76 years, which is exactly halfway between the maximum and the minimum. So the judge carefully weighed these factors, including the fact that the defendant was of a very young age, 14 years when he committed this offense, but he also had to consider the extremely serious nature of this offense. So he handed down a very reasonable sentence under the circumstances, considering all of the aggravation, all of the mitigation, and he had plenty of aggravation and he had plenty of mitigation. He handed down this midline sentence, and with credit for good time, defendant will be released at the age of 53 after serving 38 years for a murder and two attempt murders. We're not talking about a geriatric release here. Defendant will still be relatively young, 53. And that's certainly a factor that this court should and must consider. Other, you know, at some point, it does, you know, certain cases do reach the point of de facto life. This case falls far short of that with an age 53 release, and there's ample case law to support that. Evans, Applewhite. If there's no further questions, I'll conclude for all of these reasons, as well as those stated in our brief and our motion to set additional authority, the people respectfully request that this honorable court affirm the trial court's ruling denying defendant leave to file a successive post-conviction petition. Thank you. Thank you, Your Honors. I'm just going to make three quick points. As far as another reason why you should consider the full sentence, this is completely within IDOC's discretion whether he gets the good time or not. It's not subject to a formal judicial process where he would be represented by counsel, and it's much different than like a parole hearing where you'd be able to present evidence of his rehabilitation and basically evidence showing that he committed the crime when he was a kid and didn't understand what he was doing and is now a changed person. The sentence was also imposed at 100 percent time. Public Act 894.4 was in effect in August of 95. The offense was committed in May of 96, and that wasn't found unconstitutional until Reedy in 1999. And then as far as Your Honors pointing out guidance for trial courts, I don't think the courts need guidance in terms of a bright-line rule. I think the takeaway for trial courts is that they need to apply the Miller factors and construct an individualized sentence based on full consideration of those factors. Thank you, Your Honors. Thank you, Your Honor. Court will take the matter under advisement.